UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-22202-CIV-ALTMAN

**JASON WEEKS**,

    *Plaintiff*,

v.

**CORPORAL D. BRADDY,** *et al.*,

    *Defendants*.

_____/

## ORDER

Our Plaintiff, Jason Weeks, has filed a *pro se* civil rights complaint under 42 U.S.C. § 1983, alleging that the Defendants—three correctional officers employed by the Miami-Dade Department of Corrections and Rehabilitation ("MDCR")—violated the Constitution by using "excessive force and extreme violence in a low risk situation." Amended Complaint [ECF No. 6] at 1. All three Defendants have now moved to dismiss the Amended Complaint for failure to state a claim under FED. R. CIV. P. 12(b)(6). *See* Defendant Braddy's Motion to Dismiss ("Braddy MTD") [ECF No. 33]; Defendant Fleites's Motion to Dismiss ("Fleites MTD") [ECF No. 44]; Defendant Hart's Motion to Dismiss ("Hart MTD") [ECF No. 50]. Weeks didn't respond to any of these motions. *See generally* Docket.[1] Although the motions to dismiss are not identical, they all argue that the Amended Complaint should be dismissed on one of two grounds: (1) Weeks failed to exhaust his administrative remedies before filing suit, *see* Braddy MTD at 3–4; Fleites MTD at 3–7; Hart MTD at 2–5; and (2) each Defendant is entitled to qualified immunity, *see* Braddy MTD at 8–9; Fleites MTD at 7–13; Hart

---

[1] Because Weeks didn't file a Response, we **GRANT** the Defendants' motions by default. *See* S.D. FLA. L.R. 7.1(c)(1) ("[E]ach party opposing a motion shall file and serve an opposing memorandum of law no later than fourteen (14) days after service of the motion. Failure to do so may be deemed sufficient cause for granting the motion by default."). As we'll soon see, however, all three motions should be granted on their merits as well.

MTD at 5–8. After careful review, we agree with the Defendants that Weeks didn't properly exhaust his administrative remedies—and that, as a result, his case must be dismissed.[2]

### THE FACTUAL ALLEGATIONS

Shortly before noon on New Years' Day 2021, Weeks was "on the phone in Unit K4-2 in [the Turner Guilford Knight Correctional Center]." Amended Complaint at 1. During this phone call, Corporal Danielle Braddy approached Weeks and yelled at him to "get off the fucking phone." *Ibid.* When Weeks didn't immediately comply, Corporal Braddy "proceeded to press down on the phone lever and ended [Weeks's] call." *Ibid.* Weeks admits that he "became aggravated" but chose to "walk away" until Corporal Braddy told Weeks to "go to your fucking room before I fuck you up." Appendix to Amended Complaint [ECF No. 8] at 1. Weeks became so "highly frustrated" with Corporal Braddy's "constant disrespect" that he "picked up a chair and threw it in the opposite direction of myself and [Corporal Braddy.]" *Id.* at 2. After Weeks threw the chair, a "verbal altercation" ensued where Corporal Braddy began "screaming [and] shouting" at Weeks. *Ibid.* When Weeks asked, in an attempt to defuse the situation, "to be removed from the unit," Corporal Braddy "started [to] threaten to streke [sic] me and call me all types of profaine [sic] names." *Ibid.*

At some point during this altercation, Corporal Braddy yelled "fuck you [n-word] don't tell me how to do my fucking job" and punched Weeks. *Ibid.*[3] Although Weeks insists that he immediately "drop[ped] to [his] knees to surrender," Corporal Braddy continued to "beat and assault" Weeks. *Ibid.*; *see also* Amended Complaint at 2–3 ("[Camera footage will show] my attempt to comply and surrender to officers during the altercation."). After Corporal Braddy began to attack Weeks, two other officers—Vashondra Hart and Carlos Fleites—joined Corporal Braddy and began to "beat [Weeks]

---

[2] Since Weeks's failure to exhaust is dispositive, we express no view on the merits of the Defendants' other arguments.
[3] According to Weeks, Corporal Braddy falsely claimed (after the fact) that she had used physical force against Weeks because he "spat on her," an accusation Weeks vehemently denies. Amended Complaint at 2.

2

ferociously." Appendix to Amended Complaint [ECF No. 8] at 3. Even after he had been handcuffed and secured, Weeks claims that Braddy, Hart, Fleites, and other corrections officers "dragg[ed] [him] to a secluded area off camera to further assault me." Amended Complaint at 3. Weeks concludes that the Defendants "purposely and knowingly used [excessive force] . . . which violates [MDCR] protocol and procedures in a correctional facility which satisfies the elements of unnecessary and excessive force." *Ibid.*

## THE LAW

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545).

On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243,

1246 (11th Cir. 2016). Unsupported factual allegations and legal conclusions, however, receive no such deference. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). A complaint's "well-pled allegations must 'nudge the claims across the line from conceivable to plausible.'" *Hays v. Page Perry, LLC*, 627 F. App'x 892, 896 (11th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555, 570) (cleaned up).

When, as here, the plaintiff is proceeding *pro se*, the Court must interpret the complaint liberally because *pro se* pleadings are held to "less stringent standards than those drafted by an attorney." *Sause v. Bauer*, 138 S. Ct. 2561, 2563 (2018). At the same time, the Court may not "serve as de facto counsel or [ ] rewrite an otherwise deficient pleading in order to sustain an action." *Shuler v. Ingram & Assocs.*, 441 F. App'x 712, 716 n.3 (11th Cir. 2011).

## ANALYSIS

Because Weeks's excessive-force claims arise from events that took place while he was incarcerated, his suit is governed by the Prison Litigation Reform Act ("PLRA"). The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A prisoner's failure to exhaust his administrative remedies "is an affirmative defense, the burden of which is born by defendants . . . . [P]laintiffs are not required to demonstrate exhaustion in their complaints." *Alsobrook v. Alvarado*, 986 F. Supp. 2d 1312, 1322 (S.D. Fla. 2013) (King, J.) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

All three Defendants ask us to dismiss Weeks's Amended Complaint under the PLRA because he didn't avail himself of the MDCR's administrative grievance system until *after* his grievance had become untimely under the jail's regulations. *See* Braddy MTD at 4 ("Because the Plaintiff failed to exhaust administrative remedies by failing to file a timely grievance and pursue all administrative

4

recourse prior to filing suit, the Amended Complaint should be dismissed."); Fleites MTD at 7 ("Because filing an untimely grievance does not satisfy the PLRA's exhaustion requirement, Plaintiff's federal claims are foreclosed as a matter of law."); Hart MTD at 4 ("The grievance records relied upon by the Plaintiff had the grievance returned for being untimely."). We agree.

Under the PLRA, a claim becomes exhausted when a prisoner "complete[s] the administrative review process in compliance with the prison's grievance procedure[.]" *Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010)  If a prison system "provides a grievance procedure for its prisoners," then the "inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure[.]" *Varner v. Shepard*, 11 F.4th 1252, 1257 (11th Cir. 2021) (quoting *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005)). The exhaustion requirement is absolute and inflexible; indeed, a prisoner must still "exhaust administrative remedies even where the relief sought . . . cannot be granted by the administrative process." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *see also Bryant v. Rich*, 530 F.3d 1368, 1373 (11th Cir. 2008) ("We have no discretion to waive this exhaustion requirement."). While an inmate is not required to "name any particular defendant in a grievance in order to properly exhaust his claim," he must provide sufficient details about the incident to "alert[ ] prison officials to the problem and giv[e] them the opportunity to resolve it before being sued." *Parzyck*, 627 F.3d at 1218–19 (citing *Jones*, 549 U.S. at 219).

An inmate "who wishes to exhaust his administrative remedies while in the custody of MDCR must adhere to the procedures outlined in MDCR Departmental Standard Operating Procedure [("DSOP") No. 15-001]." *Gomez v. McGahee*, 2020 WL 8082394, at *3 (S.D. Fla. Dec. 9, 2020) (Reid, Mag. J.), *report and recommendation adopted*, 2021 WL 76203 (S.D. Fla. Jan. 8, 2021) (Martinez, J.); *see also* DSOP No. 15-001 [ECF No. 44-3] at 1–10. DSOP No. 15-001 outlines a two-step[4] grievance process:

---

[4] Inmates can also make an "informal complaint" before submitting a grievance, but this "step" is optional. *See* DSOP No. 15-001 at 2 ("Inmates may choose to skip the informal complaint process and immediately utilize the formal grievance process.").

(1) the inmate must "submit [a] completed Inmate Grievance form to any staff member *within 10 work days* from the date of the incident"; and, if the initial grievance is denied, (2) the inmate must "complete and submit [an Inmate Grievance Appeal] within two work days from receipt of the grievance response"—and this appeal must be submitted to the "respective Division Chief or the IMP Director." DSOP No. 15-001 at 2, 6 (emphasis added); *see also generally Ordunez v. Miami-Dade Corr. & Rehab. Dep't*, 2016 WL 11047148, at *5 (S.D. Fla. Jan. 8, 2016) (White, Mag. J.) (describing the MDCR grievance process), *report and recommendation adopted*, 2016 WL 11047149 (S.D. Fla. Feb. 22, 2016) (Ungaro, J.). "The decision of the Division Chief or IMP Director is final and there shall be no further appeal." DSOP No. 15-001 at 6.

Because "a defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter of abatement," the Eleventh Circuit has devised a "two-step process" for us to use in deciding whether a prisoner-plaintiff has exhausted his administrative remedies. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). *First*, "the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's versions of the facts as true." *Ibid*. If, under this pro-plaintiff interpretation of the facts, "the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, [the complaint] must be dismissed." *Ibid*. *Second*, "if the complaint is not subject to dismissal at the first step," we must make "findings on the disputed issues of fact" to determine whether the claims have been properly exhausted. *Id*. at 1082–83. Unlike a run-of-the-mill Rule 12(b)(6) motion to dismiss, we may "consider facts outside of the pleadings . . . to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Bryant*, 530 F.3d at 1376 (footnotes omitted); *see also White v. Berger*, 709 F. App'x 532, 541 n.4 (11th Cir. 2017) ("When ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings.").

6

The *Turner* analysis in our case is pretty simple. Because Weeks never responded to the Defendants' motions to dismiss, we have no "plaintiff's versions of the facts," so we can move directly to *Turner*'s second step. *Id.* at 1082. Weeks attached to the Amended Complaint's Appendix three grievances he'd filed against the Defendants—all dated August 18, 2022. *See* Appendix to Amended Complaint [ECF No. 8] at 5–10. The Defendants agree that Weeks filed these three grievances, and Defendant Fleites even concedes that Weeks separately filed a grievance "alleging that he was attacked and humiliated by corrections officers" on November 18, 2021. Fleites MTD at 6; *see also* August 18, 2021 Grievance [ECF No. 44-1] at 1 ("[I] was attacked and humiliated on Jan 1, 2021 1200 hours." (cleaned up)). The jail rejected all four of these grievances because they were filed more than ten days after January 1, 2021—the date on which the alleged attack occurred. *See* August 18, 2021 Grievance [ECF No. 44-1] at 2 ("Per grievance policy you must submit a grievance within (10) calendar days of when the incident occurred."); Appendix to Amended Complaint [ECF No. 8] at 5, 7, 10 (marking all three August 15, 2022 grievances as "time expired"). And our review of Weeks's MDCR grievance records reveals that "Weeks did not file any other grievances alleging he was beaten up by corrections officers on January 1, 2021, nor did he seek leave at any point to file an out-of-time grievance for good cause." Declaration of Reynaldo Romero [ECF No. 44-2] at 2.

Since Weeks didn't submit a grievance complaining about the Defendants' excessive use of force "within 10 work days" of the incident, all of his grievances were untimely under MDCR regulations. DSOP No. 15-001 at 2. And, because his grievances were untimely, Weeks failed to exhaust his administrative remedies. *See Johnson*, 418 F.3d at 1159 ("[W]e hold that the PLRA's exhaustion requirement does contain a procedural default component: Prisoners must timely meet the deadlines . . . [of] administrative grievance procedures before filing a federal claim."); *Davis v. Fla. Dep't of Corr.*, 264 F. App'x 827, 828 (11th Cir. 2008) ("[W]here an inmate's grievance is denied for failure to timely file, he is barred from bringing a federal action on his claim, as he did not fully and properly

7

exhaust his administrative remedies."). We therefore **GRANT** the Defendants' motions to dismiss—and, because it's now impossible for Weeks to properly exhaust his remedies with MDCR, we dismiss the Amended Complaint *with prejudice*. *See Bryant*, 530 F.3d at 1375 n.11 (holding that dismissal with prejudice is appropriate when administrative remedies "are absolutely time barred or otherwise clearly infeasible" (first citing *Johnson*, 418 F.3d at 1157; and then citing *Berry v. Kerik*, 366 F.3d 85, 87–88 (2d Cir. 2004))).

\*\*\*

After careful review, we hereby **ORDER AND ADJUDGE** that the Defendants' Motions to Dismiss [ECF Nos. 33, 44, 50] are **GRANTED**. The Plaintiff's Amended Complaint [ECF No. 6] is **DISMISSED with prejudice**. All deadlines are **TERMINATED**, and all other pending motions are **DENIED as moot**. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on March 23, 2023.

‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: Jason Weeks, *pro se*
    counsel of record